UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JENSEN MEHARG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-0184-DFH-TAB |
| | ) | |
| I-FLOW CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**I.      Introduction.**

Plaintiff Jensen Meharg had shoulder surgery, and following surgery a "pain pump" allegedly manufactured and distributed by Defendants was affixed to Jensen's shoulder that delivered local anesthetics to provide pain relief. [Docket No. 129, ¶¶ 13, 14.] Plaintiffs contend that as a result of the use of this device Jensen "suffered a narrowing of the joint space and/or a condition called 'glenohumeral chondrolysis,' which is the complete or nearly complete loss of cartilage in the shoulder joint, an irreversible, disabling, and extremely painful condition." [*Id*. at ¶ 14.] Jensen and her parents thereafter filed suit against Defendants for product liability, negligence, breach of express warranty, breach of implied warranty, and fraud.

On January 20, 2009, as part of ongoing discovery in this case, Plaintiffs served Don Earhart, CEO of I-Flow, with a notice of deposition. [Docket No. 117, Ex. A.] I-Flow requests the Court quash this deposition and enter a protective order prohibiting the same. [Docket No.

117.]¹   For the reasons discussed below, I-Flow's motion for protective order and to quash is granted in part and denied in part.

**II.     Discussion.**

I-Flow contends that Earhart has no unique or superior knowledge of the discovery information, that Plaintiffs have not attempted to seek discovery from Earhart using less obtrusive means, and allowing a deposition of Earhart would be an unacceptable burden to I-Flow's President and CEO.  I-Flow argues, in the alternative, that if the Court permits the deposition of Earhart, that the scope should be limited to certain topics.  Plaintiffs argue that Earhart has personal knowledge relevant to this litigation, and therefore Plaintiffs should be allowed to depose him without limitation.

Generally, a party may depose any person without leave from the Court, and the burden is on the party or person seeking the protective order to demonstrate good cause.  Fed. R. Civ. Pro. 30(a)(1); *Kaiser v. Mutual Life Ins. Co.*, 161 F.R.D. 378, 380 (S.D. Ind. 1994).  I-Flow assumes that because Earhart is its President and Chief Executive Officer the burden automatically shifts to Plaintiffs to demonstrate that a deposition of Earhart is justified.  Because "high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts," courts often bar depositions of them even absent the required showing.  *In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002).  In so doing, courts may find relevant whether the executive has unique or personal knowledge of the situation.  *See Patterson v. Avery Dennison*

---

¹ Related to this motion, I-Flow filed a motion to refile the proposed order it submitted with its motion to quash and for protective order.  [Docket No. 118.]  This motion is denied as moot.

*Corp.*, 281 F.3d 676, 681-82 (7th Cir. 2002); *Thomas v. IBM*, 48 F.3d 478, 483-84 (10th Cir. 1995); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989); *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Craig & Landreth, Inc. v. Mazda Motor of Am. Inc.*, 4:07-cv-134-SEB-WGH, 2009 U.S. Dist. LEXIS 1884, at *4-5 (S.D. Ind. Jan. 12, 2009); *In re Bridgestone/Firestone*, 205 F.R.D. at 536.  Still, the burden remains on I-Flow to demonstrate that a protective order is warranted.  *See In re Bridgestone/Firestone*, 205 F.R.D. at 536 (determining that decisions where courts imposed a burden on the proponent to demonstrate unique personal knowledge by an executive before being deposed does not establish "rigid adherence to the burdens imposed under the facts of those cases").

In upholding a trial court's decision to preclude the deposition of an executive, the Seventh Circuit advised that because of the strong public policy in favor of disclosing relevant materials, "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court."  *Patterson*, 281 F.3d at 681 (quoting *Rowlin v. Alabama*, 200 F.R.D. 459, 461 (M.D. Ala. 2001)).  Thus, in *Patterson* the court considered that the deposition was of a high-ranking executive of a multinational corporation who worked more than 1,000 miles from the facility where the plaintiff worked, that the amount in controversy in the case was not significant, and that a deposition would have been a costly and burdensome way of determining whether the executive had knowledge of any relevant information given that the plaintiff had not served interrogatories on him.  *Patterson*, 281 F.3d at 681-82.

In the case at bar, Plaintiffs seek to discover what Earhart knows about this case, and they

offer evidence that Earhart likely has unique knowledge about certain relevant events. They offer an agreement between I-Flow and DonJoy, signed by Earhart, that has become the subject of a legal dispute—specifically, whether pain pumps have been fully approved by the Food and Drug Administration for use in orthopedic applications. [Docket No. 123 at 5, Exs. 5-10.] Plaintiffs provide the statement made by Earhart on February 26, 2009, in a conference call reporting 2008 earnings, that "[t]here is no proof in the literature that pain pumps delivering the local anesthetics cause chondrolysis," in response to a question regarding the status of the pain pump litigation. [Docket No. 124 at ¶ 2.] In conjunction, Plaintiffs offer scientific articles disputing this statement by Earhart. [Docket No. 124, Exs. 1-8.] Finally, Plaintiffs provide an internal email indicating that Earhart had removed a bulletin entitled "Continuous Infusions in Restrictive Spaces" from the technical bulletin page of I-Flow's website. [Docket No. 123 at 7, Ex. 13.] These actions and representations by Earhart demonstrate a strong likelihood that he has unique knowledge about at least two basic topics: the litigation between I-Flow and DonJoy and the removal of a potentially relevant technical bulletin from I-Flow's website.

    I-Flow argues that a deposition of Earhart would be an "unacceptable burden." [Docket No. 117 at 10.] I-Flow also suggests that despite the fact that Plaintiffs have sought and received extensive written discovery and document production, they "have not demonstrated that they have made appropriate efforts to obtain the discovery sought by using less burdensome methods." [*Id*. at 9.] For example, I-Flow suggests that Plaintiffs could have but did not ask 30(b)(6) designee Roger Massengale about Earhart's involvement with the technical bulletin. [*Id*.]

    Depositions are burdensome for everyone to some extent. Quite possibly it is more

burdensome for Earhart because of his position, but I-Flow's reliance on case law for this proposition is not particularly convincing. [Docket No. 117 at 10.] I-Flow does not offer any evidence or explanation as to why the burden is "unacceptable" in this situation. Furthermore, while Plaintiffs' discovery attempts are relevant, the burden to establish good cause for a protective order does not automatically shift to Plaintiffs because of an act or omission by Plaintiffs during discovery. Plaintiffs have provided ample evidence that Earhart may have personal knowledge of these events. If he does, deposing him about these events would likely be an effective and efficient way for Plaintiffs to investigate the truth about Earhart's knowledge and perspective. Considering the totality of the situation, Plaintiffs are entitled to depose Earhart on the litigation between I-Flow and DonJoy and the removal of a potentially relevant technical bulletin from I-Flow's website, as well as other areas of which he has personal knowledge that logically flow from these two topics. Earhart need not testify about any topics of which he does not have personal knowledge.

The parties may coordinate with the Court the availability of the Magistrate Judge during the time of Earhart's deposition in order that the Magistrate Judge may resolve any disputes that may arise during the deposition regarding the scope of the questions allowed by this order. To do so, the parties may call the Court at 317-229-3660. In any event, the parties shall schedule the deposition to occur within 30 days of the date of this order.

**III.    Sealed documents.**

Plaintiffs moved to file their response to the above motion to quash and for protective order under seal pursuant to the October 28, 2008, Protective Order entered by the Court. [Docket No. 121.] The Court granted Plaintiffs' motion to file under seal on March 19, 2009,

subject to revisiting the issue when addressing this motion to quash and for protective order. [Docket No. 127.]

The reasons given by Plaintiffs to justify sealing its response are: (1) the response cites and has attached to it documents designated as confidential by I-Flow pursuant to the October 21, 2008, Protective Order; and (2) the response cites and has attached to it documents produced by a non-party that are subject to a protective order in another matter. [Docket No. 101 at ¶¶ 3-4.]

As noted by Plaintiffs, the October 21, 2008, Protective Order provides that confidential documents may be filed with the Court, and if a party would like documents to be filed under seal, the "party must file a separate and specific motion for such protection, and the motion will only be granted for good cause shown and if consistent with 7th Circuit case law regarding filing materials under seal." [Docket No. 95 ¶ 12.]

In their motion, Plaintiffs neither provided good cause nor was their request consistent with Seventh Circuit case law. There is a difference between requesting court protection for documents for purposes of discovery only, and requesting that documents submitted to and considered by the court be sealed. The latter requires more scrutiny by the court and more justification by the proponent. Recently the Seventh Circuit commented unfavorably on a motion to maintain documents under seal that did not discuss the standards set forth in *Baxter International* but merely argued to keep the documents sealed for the protection of the privacy interests of the witness involved: "the motion essentially asks the court to operate in a law-free zone." *United States v. Foster*, Nos. 09-1248, 09-1686, 2009 WL 1176478 (7th Cir. May 1, 2009) ("To call the performance of the United States Attorney's Office in this case a

6

disappointment would be a gross understatement."); *see also Baxter Int'l v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)); *Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)*; Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999); *Containment Techs. Group, Inc. v. Am. Soc'y of Health Sys. Pharmacists*, No. 1:07-cv-997-DFH-TAB, 2008 U.S. Dist. LEXIS 80688 (S.D. Ind. Oct. 10, 2008). Plaintiffs have offered no more justification for sealing its response and the documents that underpin it than that the documents are marked confidential for discovery purposes.[2] Plaintiffs have not stated the basis warranting the need to seal these documents (i.e. trade secrets, privileged documents, required by statute), nor made a showing establishing such need. *See Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348-49 (7th Cir. 2006); *Baxter Int'l*, 297 F.3d at 547. Without more justification than simply an agreement between the parties that these documents are confidential, the public is entitled to them because the Court is considering them in rendering this decision.

Also, having reviewed Plaintiffs' response and the supporting documents, the Court determines that these documents need not be sealed in their entirety (if at all). *Hicklin*, 439 F.3d at 348 ("[B]oth judicial opinions and litigants' briefs must be in the public record, if necessary in parallel versions—one full version containing all details, and another redacted version with confidential information omitted.").

Accordingly, the Court orders the parties to show cause as to why Plaintiffs' response,

---

[2] Plaintiffs have not provided the Court with enough information to determine whether the documents that are subject to a protective order in another matter are confidential for discovery purposes only or are also sealed. Without more information, the Court assumes the documents are protected for discovery purposes only.

[Docket No. 123], including all of its attachments, should remain under seal. Counsel shall show cause and include proposed redacted versions of the documents within 20 days of the date of this order.

On its own motion, the Court also considers I-Flow's reply to its motion to quash and for protective order, [Docket No. 125], which I-Flow filed under seal without obtaining leave to do so. The Court likewise orders I-Flow to show cause as to why its reply should remain under seal together with a proposed redacted version of the reply within 20 days of the date of this order.

### IV.   Conclusion.

For the foregoing reasons, I-Flow's motion to quash and for protective order [Docket No. 117] is granted in part and denied in part. The deposition of Earhart shall be conducted within 30 days of the date of this order, and the parties may coordinate with the Court a date on which the Magistrate Judge is available to resolve any disputes regarding the scope of the questioning allowed. I-Flow's motion to refile the proposed order it submitted with its motion to quash and for protective order [Docket No. 118] is denied as moot. The Court orders the parties to show cause and file proposed redacted versions of their response and reply briefs [Docket Nos. 123, 125], including all attachments, within 20 days of the date of this order.

Dated:   05/15/2009

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Case 1:08-cv-00184-WTL-TAB   Document 170   Filed 05/15/09   Page 9 of 9 PageID #: 1910

Copies to:

Geoffrey M. Coan
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
geoffrey.coan@wilsonelser.com

John J. Cord
JANET JENNER & SUGGS LLC
jcord@medlawlegalteam.com

Dina M. Cox
LEWIS & WAGNER
dcox@lewiswagner.com

Elizabeth J. Doepken
COHEN & MALAD LLP
edoepken@cohenandmalad.com

Amy K. Fisher
ICE MILLER LLP
amy.fisher@icemiller.com

James J. Freebery IV
McCARTER & ENGLISH, LLP
jfreebery@mccarter.com

Bonnie L. Gallivan
ICE MILLER LLP
gallivan@icemiller.com

Jeff S. Gibson
COHEN & MALAD LLP
jgibson@cohenandmalad.com

Charles P. Goodell Jr
GOODELL DEVRIES LEECH & DANN LLP
cpg@gdldlaw.com

Robert K. Jenner
JANET JENNER & SUGGS LLC
rjenner@medlawlegalteam.com

Maynard Kirpalani
WILSON ELSER MOSKOWITZ
EDELMAN & DICKER, LLP
maynard.kirpalani@wilsonelser.com

Gregory L. Laker
COHEN & MALAD LLP
glaker@cohenandmalad.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Lee B. McTurnan
BINGHAM MCHALE LLP
lmcturnan@binghammchale.com

Kimberly C. Metzger
ICE MILLER LLP
kimberly.metzger@icemiller.com

Kameelah Shaheed-Diallo
LEWIS WAGNER LLP
kshaheed-diallo@lewiswagner.com

Katherine A. Winchester
ICE MILLER LLP
winchest@icemiller.com