UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENSEN MEHARG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:08-cv-0184-DFH-TAB |
| ) | |
| I-FLOW CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

ENTRY ON MOTION TO RECONSIDER ORDER FOR
DISCLOSURE OF SETTLEMENT AGREEMENT

Defendant I-Flow Corporation has moved for reconsideration of one term of the court's order granting I-Flow's and plaintiffs' joint motion to dismiss claims against I-Flow. That term ordered plaintiffs to serve a copy of plaintiffs' settlement agreement with I-Flow on counsel for the Astrazeneca defendants (collectively, Astrazeneca). The court denies the motion to reconsider but will add the provison that the disclosure of the settlement agreement be under the terms of the existing protective order covering discovery of sensitive information.

I.   *Factual Background*

Plaintiff Jensen Meharg had surgery on her shoulder in 2006. As part of the post-surgical treatment, her doctor used a "pain pump" (more formally, a continuous infusion anesthetic device) manufactured by I-Flow to deliver a steady

flow of anesthetic into her shoulder space using a catheter. The anesthetic was made by Astrazeneca.

Jensen and her parents allege that Jensen suffered severe and permanent injuries as a result of using I-Flow's pain pump and the Astrazeneca anesthetic. Plaintiffs assert that the defendants' products caused the cartilage in the shoulder to deteriorate, resulting in a painful and disabling condition called glenohumeral chondrolysis. Jensen may need shoulder replacement surgery as a result.

After extensive discovery with numerous expert witnesses, plaintiffs reached a settlement with I-Flow earlier this year in negotiations to which Astrazeneca was not a party. On Friday, July 10, 2009, plaintiffs and I-Flow filed a stipulation to dismiss plaintiffs' claims against I-Flow. Plaintiffs intend to pursue their claims against the Astrazeneca defendants. On Monday, July 13, 2009, the Astrazeneca defendants filed their objection to the proposed dismissal of I-Flow. Astrazeneca argued in the alternative that if the dismissal were granted, Astrazeneca should be permitted (1) to amend its answer to assert a non-party defense regarding I-Flow under Indiana's comparative fault act, and (2) to see the settlement agreement.

There was no further reply in support of the stipulated dismissal. On Wednesday, July 29, 2009, the court granted the dismissal, allowed the addition of the non-party defense, and ordered disclosure of the settlement agreement. I-

Flow then filed its motion to reconsider on Friday, July 31, 2009. The court stayed the ordered disclosure of the settlement agreement pending briefing and a decision on the motion to reconsider.

II.     *Timing*

I-Flow objects that the court acted too quickly, contrary to its own Local Rule 7.1, without giving it an opportunity to object to Astrazeneca's request for a copy of the settlement agreement. I-Flow misunderstands the applicable procedures and rules. Despite its label, the "stipulation" of dismissal filed by plaintiffs and I-Flow was actually in substance a *motion* for voluntary dismissal under Rule 41(a)(2) of the Federal Rules of Civil Procedure. It was not a stipulation of dismissal under Rule 41(a)(1)(A)(ii) because the stipulation was not signed by "all parties who have appeared" – Astrazeneca did not join. Under Rule 41(a)(2), even such an agreed dismissal is subject to "terms that the court considers proper."

The Astrazeneca objection responded to the motion and asked the court to impose certain terms on the dismissal of the claims against I-Flow. Under the applicable court rules, I-Flow and plaintiffs had seven business days (plus three days for service) to file a reply in support of their motion to dismiss. Any reply would have been due no later than Monday, July 27th. See S.D. Ind. Local Rule 7.1(b) (allowing seven days to file reply brief in support of motion); Fed. R. Civ. P.

6(a)(2) and 6(d) (excluding Saturdays, Sundays, and holidays when time limit is ten days or less, and allowing three extra days after service).[1] When no reply was filed by that time, the court granted plaintiffs' and I-Flow's motion, adding the proposed conditions, two days later.

I-Flow viewed the situation differently. It treated the Astrazeneca objection as a separate motion, which would have allowed I-Flow until July 31st to respond (fifteen days from July 13th, counting intervening weekends, plus three days for service). I-Flow's arithmetic is correct but the court disagrees with the premise. The Astrazeneca objection was not a separate motion but an objection, one that sought the addition of two conditions to the requested dismissal. Under I-Flow's view of the procedural posture, I-Flow would have had two separate deadlines to respond to two different portions of the Astrazeneca objection: a seven day reply deadline to respond to the portion objecting to the dismissal and a fifteen day response deadline to the portion seeking conditions for the dismissal. That sort of parsing of the objection is an invitation to even more confusion. The Astrazeneca objection was merely an objection that asked the court to impose terms on the requested dismissal, as Rule 41(a)(2) contemplates. In other words, the court acted promptly to grant I-Flow's own motion but did not jump the gun in doing so, as I-Flow argues now.

---

[1] The good news for courts, attorneys, and parties is that simplified rules for measuring time are scheduled to take effect in federal courts on December 1, 2009.

Nevertheless, the court views I-Flow's confusion as understandable and excusable. The better course here is to address the merits of its objection, without worrying further about the timing. The parties' briefs on the motion to reconsider provide useful illumination for an issue that can arise often.

III.     *Disclosure of the Settlement Agreement*

Plaintiffs and I-Flow agreed that they would keep their settlement agreement confidential. As part of its reply in support of its motion to reconsider, I-Flow suggested that the court review the agreement *in camera*. The court has done so. The court is not giving away any secrets by saying that the agreement provides that it shall be kept confidential and that it contains both substantive teeth (terms for liquidated damages and attorney fees in case of a breach of confidentiality) and procedural tools (notice requirements) to accomplish that goal.

The court has treated the disclosure of the settlement agreement under general discovery standards. Astrazeneca is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). This private agreement is not protected by any legally recognized privilege. The court may still restrict discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at

stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

The questions here are whether the terms of the confidential settlement agreement may be relevant to any remaining claims or defenses, and if so, whether the burden of disclosing the terms would impose an undue burden on plaintiffs or I-Flow.

Astrazeneca argues that the terms of the settlement agreement are likely to be relevant at trial to attack I-Flow witnesses for bias and prejudice. I-Flow and its actions will remain part of the trial because of the non-party defense. The defense will require the jury to consider I-Flow in apportioning any fault that might be attributed to Astrazeneca and I-Flow. In similar contexts, courts have recognized that non-settling defendants may be entitled to know and use the terms of settlement agreements with other defendants. See *Douglass v. Hustler Magazine, Inc.*, 769 F.2d 1128, 1142-43 (7th Cir. 1985) (ordering new trial on multiple grounds, including failure to disclose to non-settling defendant a settlement with another defendant who actually went to trial but had been promised the plaintiff would not execute on any judgment against him); *In re CFS-Related Securities Fraud Litigation*, 2003 WL 24136089, *1-3 (N.D. Okla. July 31, 2003) (collecting cases and ordering disclosure of settlement to non-settling defendants).

I-Flow points out that Federal Rule of Evidence 408 narrowly limits the use of settlement agreements as evidence in a trial. But Rule 408 does not bar all use of settlement agreements in a trial. See, *e.g.*, *Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 483-84 (7th Cir. 2000) (reversing grant of new trial; use of settlement agreement at trial was permissible under Rule 408 and exclusion of it under circumstances would have been abuse of discretion); *Douglass*, 769 F.2d at 1143 (ordering new trial where one defendant had not known of private settlement with another defendant and was entitled to use settlement agreement in cross-examination of settling defendant).

Astrazeneca points out correctly that Rule 408 applies only to admissibility at trial, not to discovery. Astrazeneca cannot know whether this settlement agreement might fall within one of those Rule 408 exceptions unless it can learn the terms of the settlement agreement. See *Bennett v. LaPere*, 112 F.R.D. 136, 139 (D.R.I. 1986); see also *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 211 (D.D.C. 2005) (Rule 408 limits admissibility at trial but not discoverability; permissible uses of settlements as evidence imply that discovery of such matters is permissible).

Magistrate Judge Denlow persuasively addressed a similar problem in *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364 (N.D. Ill. 2001). In a dispute over whether bidders on valuable violins owned by an estate had conspired to keep prices low, one defendant settled. The other defendants sought access to the

-7-

settlement agreement and the negotiations leading up to it.  Judge Denlow ordered disclosure of the final settlement agreement but not the negotiations.  He explained that disclosure of the final settlement terms could promote settlement with the remaining defendants and that the settlement agreement could be admissible at trial:

> In addition, the discovery could foster settlement talks, which in turn promotes judicial economy. For example, in a claim for $1,000,000 involving overlapping claims against multiple defendants, the fact that one defendant has settled for $0, $100,000 or $750,000 has great strategic significance to the remaining defendants. Such information may promote settlement of the remaining claims and permits the remaining defendants to evaluate their risks in continuing with the litigation.
>
> *   *   *
>
> Because [settling defendant] Gottlieb will likely be a witness, the remaining defendants are entitled to learn whether any promises have been made in connection with his dismissal as a party defendant or whether Plaintiffs chose to voluntarily drop their claims against Gottlieb.  *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 1998 WL 186705 (E.D. La. 1998) (Finding discovery of settlement agreements is permitted to evaluate a witness' potential bias, interest and credibility).  See also *Tribune Co. v. Purcigliotti*, 1996 WL 337277 (S.D.N.Y. 1996); *Griffin v. Mashariki*, 1997 WL 756914 (S.D.N.Y. 1997) (Allowing discovery of settlement agreements on issue of witness bias).

203 F.R.D. at 367-68.

The decision in *White* drew on Judge Selya's decision as a district judge in *Bennett v. La Pere*, 112 F.R.D. 136 (D.R.I. 1986), similarly ordering disclosure of a settlement agreement to the non-settling defendant.  In a medical malpractice case, the plaintiffs had settled with the doctors but were pursuing their claims against the hospital.  The hospital wanted to see the settlement agreement, and

-8-

the settling parties made essentially the same arguments that I-Flow makes here. Judge Selya persuasively rejected them. He concluded, among other things, that the terms of the agreement might become relevant in apportioning liability among the different defendants under state law or to prove bias or prejudice by a witness. The court acknowledged that Rule 408 might or might not allow use of the settlement agreement as evidence, but disclosure was required to give the non-settling defendant a fair opportunity to see if it might be used:

> There is, of course, no satisfactory way for the Hospital to determine whether it can slip within the integument of the Rule 408 exception unless it gains discovery access to the settlement documents. At bottom, the Bennetts' plea that the settlement documentation is wholly immaterial represents the triumph of hope over reason. Indeed, the grounds they assert for a protective order presume a conclusion that can only be fairly reached, in our adversary system, through disclosure.

112 F.R.D. at 139. Judge Selya went on to conclude that the limited disclosure would not unduly impair the ability of parties to settle or impair other important interests. The court ordered disclosure of the settlement agreement under the terms of the protective order governing discovery in the case.

Both *White* and *Bennett* discussed a number of other cases addressing the topic, and this court need not repeat those discussions further. The case law from similar contexts calls for disclosure in this situation.

I-Flow argues that cases from this district show that its settlement agreement should not be disclosed to the non-settling defendants. I-Flow relies

-9-

on *In re AT&T Fiber Optic Cable Installation Litigation*, 2002 WL 1364157 (S.D. Ind. June 5, 2002), in which this court held that plaintiffs who were suing AT&T for violating their property rights by installing fiber optic cables within railroad rights-of-way were not entitled to see confidential settlement agreements between AT&T and its liability insurers. The court reached that decision only after reviewing the settlement agreements *in camera* and determining that they did not fall within the carefully worded scope of Rule 26(a)(1)(D) because they did not make the insurers contingently liable to satisfy any part of a judgment that might be entered against AT&T. The opinion in *AT&T* explicitly distinguished that situation from cases like this one, in which a non-settling defendants seek a confidential settlement agreement between plaintiffs and another defendant in the same lawsuit. *Id.* at *2, distinguishing both *White*, 203 F.R.D. 364 (N.D. Ill. 2001), and *Bennett*, 112 F.R.D. 136 (D.R.I. 1986). *AT&T* does not support I-Flow's objection to disclosure in this case.

I-Flow also cites *Centillon Data Systems, Inc. v. Ameritech Corp.*, 193 F.R.D. 550 (S.D. Ind. 1999), which was a patent infringement suit involving telephone technology. Magistrate Judge Foster decided not to compel disclosure of a settlement agreement between the plaintiff and AT&T in an earlier case involving the same patents. AT&T was not a party to the case before the court. It intervened to object to disclosure, arguing that its settlement agreement with the plaintiff contained financial and other competitively sensitive information that should not be disclosed to a competitor (the defendant seeking disclosure). Judge

Foster balanced the competing interests and saw very little relevance in the action pending before him.

This court does not disagree with that evaluation in *Centillon Data Systems*, but two important factors distinguish the case from this one. First, there was no prospect of joint fault or responsibility for the alleged wrong and damages in that case. Thus there was no prospect that AT&T and its witnesses would be involved in the trial and no reason to think it was even possible that the settlement agreement might be relevant to witness bias or prejudice. Second, the ongoing competitive relationship between AT&T and the moving defendant seeking disclosure added an important reason for denying access to the information. The reasoning of *Centillon Data Systems* does not extend to bar disclosure of the settlement agreement in this case.

In its reply brief, I-Flow argues that Astrazeneca does not need the settlement agreement to cross-examine witnesses, including expert witnesses, because they all provided written reports and almost all were deposed before the settlement. If any witness tries to vary his or her testimony in light of the settlement, says I-Flow, Astrazeneca can use the written reports and prior testimony to impeach the witness without the settlement agreement.

This argument is not persuasive. This court often sees attempts to impeach witnesses, including experts, with prior reports or deposition testimony.

-11-

Witnesses are often able to explain away variations and contradictions, especially where there is no apparent reason why they might have deliberately tried to shade or change their testimony.  External evidence of a change in circumstances that shows a motive to shade or alter testimony can provide a powerful boost to the impeachment.  It can make it easier for the jury to understand that the impeachment might be more than just a clever lawyer's tactic and instead shows show that the witness is willing to alter or shade her testimony for specific reasons.  It remains to be seen whether any of these witnesses will actually testify in person at trial, let alone whether their testimony will be subject to impeachment.  But Astrazeneca should be allowed access to the settlement agreement so it can prepare for such scenarios at trial.

Agreed settlements of dispute are of course essential in the American civil justice system.  Courts try to encourage them whenever possible.  That is why Rule 408 limits their admissibility so narrowly.  But the law does not treat them as privileged.  Other policy considerations are in play, including fairness to those parties who actually go to trial.  The court is not persuaded that disclosure of the terms of this settlement agreement to the non-settling defendants in the same lawsuit undermines any important public policy.

I-Flow contends it will be prejudiced by disclosure in other pending lawsuits around the country involving similar claims for shoulder chondrolysis in which Astrazeneca is also a defendant.  I-Flow has not explained how it might be

prejudiced. If the theory is that I-Flow might become more reluctant to settle on confidential terms in other cases without a guarantee that the confidentiality can be maintained, the problem is that confidentiality cannot be given air-tight guarantees when there are other interested parties with legitimate and legally cognizable interests in discovery of such agreements.

Finally, I-Flow suggests that if the court disagrees and orders disclosure, the disclosure should be on an attorneys'-eyes-only basis with the amount of the monetary settlement redacted, and that use should be limited to only this case. Limiting use to this case makes sense and is consistent with the existing protective order. Redaction of the monetary settlement would not be consistent with potentially permissible uses of the settlement agreement. For purposes of showing bias or prejudice of I-Flow witnesses, it would surely be relevant to know whether the settlement was for one million dollars or one thousand dollars. See *White*, 203 F.R.D. at 367. The suggestion of attorneys'-eyes-only production is an extreme measure for exceptionally sensitive information that is highly susceptible to being misused, such as inside information about a competitor's finances or business strategies. Attorneys'-eyes-only disclosure puts attorneys in a very difficult position in which they cannot disclose important information to their clients. This difficult situation should be avoided when possible. The court does not see the same prospect for misuse of this settlement information that exists in the competitive context. The protections for confidential information should be sufficient: the Astrazeneca defendants shall keep the document and its terms

confidential and may use the document and its terms only in connection with this case. The procedures of the current protective orders in this case shall apply to any efforts to file the information with this court or any requests for production of the document from other courts or other outside sources. See generally *Davenport v. Indiana Masonic Home Foundation, Inc.*, 2003 WL 1888986, at *2 (S.D. Ind. March 27, 2003) (denying access to settlement in different case); *Butta-Brinkman v. FCA International, Ltd.*, 164 F.R.D. 475, 477 (N.D. Ill. 1995) (denying motion to compel defendant-employer to produce in discovery its settlements in other similar cases).

Accordingly, plaintiffs' motion (Dkt. No. 236) to join in I-Flow's motion for reconsideration is granted. I-Flow's motion for reconsideration (Dkt. No. 234) is denied. Plaintiffs shall comply with the court's order for disclosure no later than September 29, 2009, and the Astrazeneca defendants shall keep the document and its contents confidential as set forth above.

So ordered.

Date: September 18, 2009

*/s/ David F. Hamilton*

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Arend J. Abel
COHEN & MALAD LLP
aabel@cohenandmalad.com,tasbury@cohenandmalad.com

Geoffrey M. Coan
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
geoffrey.coan@wilsonelser.com,marjorie.vangalen@wilsonelser.com

John J. Cord
JANET JENNER & SUGGS LLC
jcord@medlawlegalteam.com

Dina M. Cox
LEWIS & WAGNER
dcox@lewiswagner.com,smishler@lewiswagner.com

Jessica Benson Cox
ICE MILLER LLP
jessica.cox@icemiller.com,elaine.evans@icemiller.com

John P. Daly , Jr
COHEN & MALAD LLP
jdaly@cohenandmalad.com,lhoward@cohenandmalad.com

Elizabeth J. Doepken
COHEN & MALAD LLP
edoepken@cohenandmalad.com,lcord@cohenandmalad.com

Audra Jae Ferguson-Allen
ICE MILLER LLP
audra.ferguson-allen@icemiller.com

Amy K. Fisher
ICE MILLER LLP
amy.fisher@icemiller.com

James J. Freebery , IV
McCARTER & ENGLISH, LLP
jfreebery@mccarter.com

Bonnie L. Gallivan
ICE MILLER LLP
gallivan@icemiller.com,ramona.king@icemiller.com

Robert L. Gauss
ICE MILLER LLP
gauss@icemiller.com,worth@icemiller.com

Jeff S. Gibson
COHEN & MALAD LLP
jgibson@cohenandmalad.com,lwathen@cohenandmalad.com,lhoward@cohenandmalad.com,jhedden@cohenandmalad.com,aelkins@cohenandmalad.com

Charles P. Goodell , Jr
GOODELL DEVRIES LEECH & DANN LLP
cpg@gdldlaw.com,jdm@gdldlaw.com

Jeffrey H. Horowitz
KAYE SCHOLER LLP
jhorowitz@kayescholer.com

Robert K. Jenner
JANET JENNER & SUGGS LLC
rjenner@medlawlegalteam.com

Brian Ketterer
JANET JENNER & SUGGS, LLC
bketterer@medlawlegalteam.com,bdk1975@yahoo.com

Maynard Kirpalani
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
maynard.kirpalani@wilsonelser.com,mkirpalani@comcast.net,marjorie.vangalen@wilsonelser.com

Gregory L. Laker
COHEN & MALAD LLP
glaker@cohenandmalad.com,lwathen@cohenandmalad.com,lhoward@cohenandmalad.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com,jsmock@cohenandmalad.com

Lee B. McTurnan
BINGHAM MCHALE LLP
lmcturnan@binghammchale.com,gpsmith@binghammchale.com

Kimberly C. Metzger
ICE MILLER LLP
kimberly.metzger@icemiller.com,Tonya.Thompson@icemiller.com

Kameelah Shaheed-Diallo
LEWIS WAGNER LLP
kshaheed-diallo@lewiswagner.com,smishler@lewiswagner.com,kshaheed@gmail.com

C. Calvin Warriner , III
SEARCY DENNEY SCAROLA BARNHART & SHIPLEY, P.A.
ccw@searcylaw.com,slv@searcylaw.com,jch@searcylaw.com,oap@searcylaw.com,bsf@searcylaw.com

Katherine A. Winchester
ICE MILLER LLP
winchest@icemiller.com,ramona.king@icemiller.com